UNITED STATES

v.

**Airman Basic Brent K. WARNER, FR122–72–9332, United States Air Force.**

ACM 28651.

U.S. Air Force Court of Military Review.

Sentence adjudged 12 April 1990.

Decided 17 June 1991.

Appellate Counsel for the Appellant: Lieutenant Colonel Jeffrey R. Owens, Major Ronald G. Morgan and Captain Michael D. Burt.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Brenda J. Hollis and Major Leonard R. Rippey.

Before MURDOCK, KASTL, O'HAIR and MILLS, Appellate Military Judges.

## OPINION OF THE COURT

KASTL, Senior Judge:

Three issues challenge us in this case. They involve: (a) pretrial confinement; (b) multiplicity *vis-a-vis* serial larcenies; (c) and guidance in the staff judge advocate's recommendation.

Airman Basic Warner wrongfully borrowed a master key to the rooms of his dormitory. He then embarked on a series of unlawful entries and larcenies. In accordance with his pleas [1], he was found guilty at a general court-martial bench trial. His approved sentence is a bad conduct discharge, 18 months confinement, and total forfeitures.

When the case first reached us, we specified three questions to appellate counsel.

1. He pleaded guilty to a lesser included offense as to Charge II, specification 2 and was found

Benefitting from perceptive briefs, we will address each.

## I

DID THE MILITARY MAGISTRATE IMPERMISSIBLY RETAIN THE APPELLANT IN PRETRIAL CONFINEMENT SOLELY BECAUSE OF THE SERIOUSNESS OF THE OFFENSES OF WHICH THE APPELLANT WAS CHARGED?

■ We resolve this issue against the appellant on the basis of waiver—this question was not addressed at trial by Warner or his counsel. *United States v. Gambini,* 10 M.J. 618 (A.F.C.M.R.1980), *sen. rev'd. on other grounds,* 13 M.J. 423 (C.M.A. 1982); *United States v. Mathieu,* 29 M.J. 823 (A.C.M.R.1989); *United States v. Walker,* 27 M.J. 878 (A.C.M.R.1989). *See also United States v. Palmiter,* 20 M.J. 90, 100 (C.M.A.1985) (Everett, C.J., concurring).

■ Even were we to reach the merits, we would find no error. We are convinced by our review that Warner posed a continuing threat to the morale, discipline, and effectiveness of his unit; he was not placed in pretrial confinement solely because of the nature of his offenses. R.C.M. 305(h)(2)(B); *United States v. Rios,* 24 M.J. 809 (A.F.C.M.R.1987); *United States v. Hitchman,* 29 M.J. 951 (A.C.M.R.1990). *See also United States v. Heard,* 3 M.J. 14 (C.M.A.1977) and Note, "Preventive Detention: The 'He'll Do it Again' Basis for Pretrial Confinement," Army Lawyer (December 1986) 44.

## II

IN REGARD TO MULTIPLICITY, WERE CHARGE I, SPECIFICATIONS 2, 3, AND 4 SO CLOSELY RELATED IN TIME AND PLACE AS TO CONSTITUTE BUT A SINGLE COURSE OF CRIMINAL CONDUCT?

guilty of that lesser crime.

The initial question before us is whether this issue was waived by a defense failure to object. The answer is no. As we read *United States v. Holt*, 16 M.J. 393 (C.M.A.1983), failure of trial defense counsel to object to multiplicious charging will not bar appellate relief.

We now move on to face the issue foursquare. We are mindful of the precedential possibilities of *United States v. Campbell*, 22 M.J. 99 (C.M.A.1986) (Sum. Dis.) and *United States v. Huggins*, 17 M.J. 345 (C.M.A.1984) (Sum.Dis.). As best we can tell, both involved larcenies *at the same time and place from different victims*. We find today's situation factually distinguishable from *Campbell* and *Huggins*.

The appellant lived on the third floor of the dormitory at the time. His offenses occurred on the first, second, and third floors. Even if Warner had the reputed speed of the comic book character "The Flash," *he would have had a reasonable opportunity between the separate offenses to reflect and choose to refrain from committing additional crimes*. In sum, sufficient time and distance existed between the offenses so that each was separate for charging. It follows that this situation is not governed by the Manual for Courts–Martial rationale found in Part IV, para. 46c(1)(h)(ii) (". . . if a thief steals a suitcase containing the property of several persons or goes into a room and takes property belonging to various persons, there is but one larceny, which should be alleged in but one specification."); *see also United States v. Jobes*, 20 M.J. 506, 512 (A.F.C.M.R.1985), *pet. denied*, 21 M.J. 102 (C.M.A.1985); *United States v. Fairley*, 27 M.J. 582 (A.F.C.M.R.1988).

The appellant is entitled to no relief or consolidation of offenses. *United States v. Collins*, 16 U.S.C.M.A. 167, 36 C.M.R. 323 (1966); *United States v. Swigert*, 8 U.S.C. M.A. 468, 24 C.M.R. 278, 281 (1957); *United States v. Clason*, 48 C.M.R. 453 (N.C.M. R.1974) (good analysis of precedents). *See also United States v. Ventegeat*, 20 U.S.C. M.A. 32, 42 C.M.R. 224 (1970).

## III

## DID THE STAFF JUDGE ADVOCATE'S RECOMMENDATIONS MISLEAD THE CONVENING AUTHORITY BY COUNSELLING HIM THAT HIS ACTION ON FINDINGS AND SENTENCE SHOULD CONSIDER: "THE INTEREST OF JUSTICE, DISCIPLINE, MISSION REQUIREMENTS, CLEMENCY AND OTHER APPROPRIATE REASONS?"

In his recommendation to the convening authority, the staff judge advocate discussed what action the convening authority could take on the action and the sentence. Part of his wording is quoted here:

36. ACTION ON THE FINDINGS AND SENTENCE:

a. The action you take on the findings and sentence is within your sole discretion and is a matter of command prerogative. Your action should consider and be taken in the interest of justice, discipline, mission requirements, clemency, and other appropriate reasons.

When we specified the issue on this point, we were concerned about the staff judge advocate's recommendation that the convening authority use considerations such as mission requirements and discipline to guide his decision on the findings and to a lesser extent the sentence in this case.

The language in the recommendation is drawn verbatim from R.C.M. 1107(b)(1)'s non-binding Discussion. It provides that the action of the convening authority: ". . . is taken in the interests of justice, discipline, mission requirement, clemency and other appropriate reasons." These words appear verbatim in the staff judge advocate's recommendation.

History may assist in an appreciation of this language. Before 1984, Article 64, UCMJ, authorized a convening authority acting on findings to approve "only such findings of guilty . . . as he finds correct in law and fact and as he in his discretion determines should be approved." That convening authority could weigh evidence, judge witness credibility, and decide contro-

verted questions of fact. Unless he determined that guilt was established beyond a reasonable doubt by competent evidence of record, he was required to "disapprove the finding." MCM, 1969, para. 87a(3). *See generally* DA Pam 27–175–1, *Review of Courts–Martial,* Initial Review (June 1961) 91–107.

Under the current Manual for Courts–Martial, the convening authority's responsibilities are much different. Article 60(c)(3), UCMJ, covers the area previously covered by Article 64. It provides that the convening authority need not act on findings. However, in his sole discretion, he still may consider them. He can dismiss any specification by setting aside a finding of guilty, or he can change a finding of guilty to that of a lesser included offense. *See* R.C.M. 1107(b)(1); Analysis, Appendix 21, Rules 1104(e), 1106(d), and 1107(c), pages A21–72 to A21–74; *United States. v. McKinley,* 27 M.J. 78, 80 (C.M.A.1988); *see generally United States v. Hall,* 26 M.J. 739, 742 (N.M.C.M.R.1988), *pet. denied,* 26 M.J. 290 (C.M.A.1988).

We are concerned that recommendations such as this one, which mention "discipline" and "mission requirements" as factors for the convening authority to consider may prejudice convicted servicemembers in some situations.

A practical example will clarify our concerns. Suppose the convening authority becomes interested in a court-martial case after the accused's parents intercede. Impressed by parental concern, he reads the entire record and begins to doubt the accused's guilt. He might naturally turn to the Recommendation of his staff judge advocate to resolve his doubt. Following its guidance, he might place into the scales the inchoate needs of discipline and the mis-

sion. This might lead him to reluctantly endorse the findings.[2]

Our example supposes that the 1984 Manual is in effect and that the convening authority need not independently weigh innocence or guilt. Our concern arises when the convening authority is formally advised in a Recommendation that he virtually errs in law if he ignores "discipline" or "mission requirements" in deciding whether the accused was properly found guilty. Such a Recommendation would ignore the minimal requirements of military due process crafted through the decades. *See United States v. Duffy,* 3 U.S.C.M.A. 20, 11 C.M.R. 20, 23 (1953). *See also United States v. Carey,* 11 U.S.C.M.A. 443, 29 C.M.R. 259, 261 (1960); *United States v. Beyers,* 32 C.M.R. 755, 758–759 (A.F.B.R.1962) (excellent review of older precedents).

After perusal of the recommendation as a whole, we are convinced that the substantial rights of this appellant were not jeopardized. *See generally United States v. Massey,* 5 U.S.C.M.A. 514, 18 C.M.R. 138, 146–147 (1955); *see also United States v. McKnight,* 30 M.J. 205, 209 (C.M.A.1990); *United States v. Hurlburt,* 3 M.J. 387 (Sum.Dis.) (C.M.A.1977); *United States v. Bras,* 3 M.J. 637, 640 (N.C.M.R. 1977).[3]

Nonetheless, staff judge advocates should exercise caution when they use such language in future Recommendations. Concededly, language about mission requirements appears in the current Manual for Courts–Martial. These words, however, are gloss, not gospel, since they appear in the *non-binding* Discussion accompanying R.C.M. 1107(b)(1). *See generally United States v. Massey,* 18 C.M.R. at 145; *United States v. Duffy,* 11 C.M.R. at 23; *see also United States v. Pratts–Luciano,* 15 C.M.R. 481, 482 (A.C.M.R.1954).[4]

---

**2.** *See* Matthew 27:24.

**3.** As to matters that operate to the accused's advantage, the reviewing authority has a free hand. As Judge Brosman eloquently expressed it, he may consult "a guy named Joe." *United States v. Coulter,* 3 U.S.C.M.A. 657, 663, 14 C.M.R. 75, 81 (1954). But, in affirming findings of guilty, the convening authority must act on the record alone and without predisposition or

bias against the accused. *See United States v. Griffin,* 8 M.J. 66, 69 (C.M.A.1979). Accordingly, we see no prejudice. He pled guilty, has no complaint before us as to the sentence and even received a reduction in the amount of confinement from 27 months to 18 months.

**4.** The other matter raised by the appellant is resolved against him. *United States v. Corraine,*

The findings of guilty and the sentence are correct in fact and law. Upon the basis of the entire record, they are

AFFIRMED.

Senior Judge MURDOCK concurs.

Senior Judge O'HAIR did not participate.

Senior Judge KASTL authored this decision prior to his retirement.

Judge MILLS (concurring in the result):

Like my brothers, I am convinced this case should be affirmed. I write separately to express disagreement with one aspect of the lead opinion.

Senior Judge Kastl expresses concern that the staff judge advocate's recommendation advised the convening authority that he should consider, among other things, mission requirements and discipline when taking action on the findings and the sentence. As he points out, the specific language he is concerned about was taken verbatim from the non-binding Discussion of R.C.M. 1107(b)(1).

If this language had been used prior to enactment of the Military Justice Act of 1983 [5], I would agree with the above concern. However, under the 1983 legislation, as implemented by the 1984 Manual for Courts–Martial, the convening authority's role is limited basically to clemency. *See United States v. McKnight,* 30 M.J. 205, 209 (C.M.A.1990); Article 60(c)(1) and (3), UCMJ; H.Rep. No. 549, 98th Cong., 1st Sess. 19–20 (1983); S.Rep. No. 53, 98th Cong., 1st Sess. 19–20 (1983); U.S.Code Cong. & Admin.News 1983, pp. 2177, 2183, 2184. *See also,* R.C.M. 1106 and 1107. "The action to be taken on the findings and sentence is within the sole discretion of the convening authority" and "is a matter of command prerogative." R.C.M. 1107(b)(1). He "may for any reason or no reason disapprove a finding of guilty or approve a finding of guilty only of a lesser offense." R.C.M. 1107(c), Discussion. *See United*

States *v. McKinley,* 27 M.J. 78, 80 (C.M.A. 1988); Article 60(c), UCMJ.

In addition to considering "discipline," the convening authority may want to consider "mission requirements" and decide that it is more important that a convicted accused be returned to duty than be placed in confinement or discharged. Neither the statute, Article 60, UCMJ, nor the Manual for Courts–Martial, United States, 1984, R.C.M. 1106 and 1107, prohibits the language used by the staff judge advocate.

Finally, it seems clear that Congress intended mission requirements and discipline be among a convening authority's considerations:

> Article 60(c) provides the convening authority with complete discretion in acting on the sentence, so long as the sentence is not made more severe. It also authorizes the convening authority to set aside a finding of guilty and dismiss the charge and specification as a matter of discretion. In addition, he may modify a finding of guilty to specify a lesser included offense. The requirement in the current Article 64 that the convening authority approve only so much of the findings of guilty and sentence "as he finds correct in law and fact" is deleted. Under Article 60, as proposed, the convening authority may take any action on findings and sentence he deems appropriate (as long as the result is not made more severe). Such action is a matter of commander's prerogative that is *taken in the interests of justice, discipline, mission requirements, clemency, or other appropriate reasons,* and is not a review for legal sufficiency.

S.Rep. No. 53, 98th Cong., 1st Sess. 19 (1983) (emphasis added). For the above reasons, I find no objections to the language used by the staff judge advocate in his recommendation to the convening authority.

31 M.J. 102, 106 (C.M.A.1990); *United States v. Partyka,* 30 M.J. 242, 247 (C.M.A.1990).

5. Pub.L. No. 98–209, sec. 5(a)(1), 97 Stat. 1393, 1396–97 (1983).